UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RACHEL C. LOGAN,

      Plaintiff,                           Civil Action No.
                                              13-CV-12807

v.

                                            Honorable Patrick J. Duggan

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

### OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, and REMANDING THE CASE PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)

       This is a social security case. Plaintiff Rachel C. Logan challenges the final decision of Defendant Commissioner of Social Security denying her claim for disability insurance benefits; in particular, Plaintiff claims that the decision of the Administrative Law Judge (ALJ), which became the final decision of Defendant on May 10, 2013, is not supported by substantial evidence. The parties have filed cross-motions for summary judgment. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court will decide this matter without oral argument. For the reasons that follow, the Court will grant Plaintiff's motion, deny Defendant's motion, and remand the matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

       Plaintiff was born on November 1, 1969, and was forty years old on April 18, 2010, the alleged onset date of her disability. Page ID 84. Plaintiff graduated from high school and took some college courses, but did not obtain a college degree. *Id.* Plaintiff's past work experience includes work as an assembly worker, an airport dispatcher, and a bartender. Page ID 84-86. Plaintiff was laid-off from her job as an airport dispatcher and received unemployment benefits

from July 1, 2009 through December 31, 2010.  Page ID 86.  When asked by the ALJ to describe in her own words why she believes she is unable to work, Plaintiff testified that she suffers "[e]xcruciating" and "constant" pain in her neck, back, hands, and fingers, causing her to "have to lie down a lot to try to relieve the pain."  *Id.*  Specifically, Plaintiff testified that, beginning in April 2010, she has had to lie down four to five times per day for about ten or twenty minutes each time to relieve her pain.  Page ID 87-88.  Plaintiff received steroid shots and Vicodin for her pain, both of which "take the edge off."  Page ID 88.  Plaintiff also received cortisone shots in her feet and physical therapy for her back and feet.  Page ID 89-90.  The physical therapy makes Plaintiff's back pain "tolerable" such that Plaintiff can "kind of manage" the pain.  Page ID 90. On a scale of one through ten, with ten being the most severe, Plaintiff rated her pain after taking her medications at an eight.  Page ID 88-89.  Plaintiff also testified that she can walk for about a block at a time, stand for about ten minutes at a time, sit for about thirty minutes at a time, and lift four or five pounds.  Page ID 89.

The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform light work with the following limitations: (1) can stand and walk for no more than six hours in an eight-hour workday; (2) can sit for up to six hours in an eight-hour workday; (3) would need to be able to sit/stand at will up to once every fifteen minutes, resulting in being off task up to 15% of the day; (4) can lift twenty pounds occasionally and ten pounds frequently; (5) can never perform work involving pushing or pulling of levers or pedals with any of the extremities; (6) can occasionally kneel, crouch, crawl, bend, climb, or squat; (7) can reach no more than 2/3 of the workday; (8) can never perform repetitive gripping, twisting, or turning with the bilateral upper extremities; (9) can never use vibratory tools; and (10) can only perform simple, routine

tasks in a low stress environment, defined as no quick decision-making and no quick judgment. Page ID 69.

In fashioning Plaintiff's RFC, the ALJ did "not give[] significant weight" to Plaintiff's testimony regarding her limitations. Page ID 72. The ALJ gave three reasons for discounting Plaintiff's credibility. First, the ALJ found Plaintiff's allegations to be "inconsistent with the objective medical findings in the record." Page ID 72. Second, the ALJ found that the record evidence reflects "numerous instances where [Plaintiff] was non-compliant with treatment, medication, or recommendations." *Id.* Finally, the ALJ noted that Plaintiff collected unemployment (requiring her to represent that she is capable of working) during the same time period in which she claims to be entitled to disability insurance benefits (requiring her to represent that she is "disabled" and thus cannot engage in any substantial gainful employment). The ALJ determined that, while Plaintiff's "receipt of unemployment benefits does not bar her from seeking and receiving disability insurance benefits," the fact that she seeks both "bears negatively on the issue of [her] credibility." Page ID 66.

The parties disagree as to whether the ALJ's decision to discount Plaintiff's credibility is supported by substantial evidence – the standard by which the Court reviews the ALJ's decision. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). "When deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, [courts] do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

3

Social Security Ruling 96-7p requires that the decision of an ALJ regarding a claimant's credibility "contain specific reasons for the finding on credibility" that are "supported by the evidence in the case record," and prohibits determinations resembling a "conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"   In the present case, the first reason given by the ALJ for discounting Plaintiff's credibility is that her "testimony is not well supported by the objective medical evidence in the record."  Page ID 72.  As the parties note, the ALJ does not discuss the inconsistencies on which she relied in the same paragraph as she concluded that Plaintiff's "testimony is not well supported by the objective medical evidence in the record."  Defendant argues that the ALJ notes inconsistencies between Plaintiff's testimony and the objective medical evidence elsewhere in the decision.  *See, e.g.*, Page ID 70 (noting that Plaintiff "complained that she felt occasional numbness in her legs after sitting," and stating in the next sentence that "[n]eurological examinations consistently revealed normal results"); *id.* (noting that x-rays of Plaintiff's lumbosacral spine revealed "mild degenerative disc disease . . . with minimal narrowing of the left neural foramen," and an MRI of Plaintiff's cervical spine revealed "mild cervical spondylosis and minimal discogenic degenerative changes).  However, it is not sufficiently clear whether – and if so, why – the ALJ deemed the results of the neurological examinations, x-ray, and MRI to be inconsistent with Plaintiff's testimony.  Social Security Ruling 96-7p requires that the ALJ's credibility determinations be "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  The ALJ's conclusion that Plaintiff's testimony is inconsistent with the objective medical evidence is not sufficiently explained so as to allow Plaintiff and the Court to understand the basis for the conclusion.

In addition, the ALJ's conclusion that the evidence reflects "numerous instances where [Plaintiff] was non-compliant with treatment, medication, or recommendations" is also not supported by substantial evidence. The ALJ noted in her decision that Plaintiff treated with a therapist for her emotional issues from May 26, 2011 through July 29, 2011, but that Plaintiff "did not appear for three of six scheduled sessions." Page ID 70. Notably, these three missed therapy sessions are the only instances of non-compliance that may be inferred from the ALJ's decision.[1] However, missing three therapy sessions does not amount to "numerous" instances of non-compliance with treatment, medication, or medical recommendations by any stretch of the imagination. In addition, the evidence reflects that Plaintiff failed to attend one of the three missed sessions because she was hospitalized, Page ID 700, leaving only two sessions that Plaintiff missed without excuse. With regard to those two missed sessions, though, the ALJ did not elicit from Plaintiff during the hearing any information regarding why she missed those sessions, so there is an insufficient evidentiary basis on which to conclude that Plaintiff was "non-compliant" for missing those sessions. In any event, missing two therapy sessions – no matter what the reason – does not amount to "numerous" instances of non-compliance with treatment, medication, or recommendations.

Finally, the ALJ discounted Plaintiff's credibility because she sought disability insurance (involving a representation that she cannot work) while simultaneously collecting unemployment benefits (involving a representation that she is available to perform suitable full-time work). As Defendant points out, in *Workman v. Commissioner of Social Security*, 105 F. App'x 794, 801-

---

[1] The ALJ did not list the instances of non-compliance on which she relied in the same paragraph as she noted that the evidence reflects "numerous instances where [Plaintiff] was non-compliant with treatment, medication, or recommendations." Page ID 72. Thus, it is not entirely clear why the ALJ thought that Plaintiff was non-compliant. However, the only arguable instances of non-compliance that may be gleaned from the ALJ's decision relate to the three missed mental health therapy sessions.

802 (6th Cir. 2004), the Sixth Circuit noted that "[a]pplications for unemployment and disability benefits are inherently inconsistent" and held that it was not improper for the ALJ to rely on the inconsistency in concluding that the claimant's hearing testimony was "not entirely credible." Plaintiff argues that "the receipt of unemployment benefits does not necessarily equate as being ready, willing and able to work" because (1) the requirement that an applicant "be available to perform suitable full-time work," Mich. Comp. Laws § 421.28(1)(c), may be waived if suitable work is unavailable in the locality in which the applicant resides, *id.* § 421.28(1)(a); and (2) benefits can be paid to an applicant under certain conditions if he or she left work involuntarily due to medical reasons. *Id.* § 421.29(1)(a). However, Plaintiff does not allege that she sought or received a waiver under § 421.28(1)(a), and Plaintiff testified that she was laid off from her job as an airport dispatcher. Regardless, even if she did leave for medical reasons, the cited portion of the statute does not relieve an applicant from proving that he or she is "available to perform suitable full-time work." The Court discerns no error in the ALJ's decision to discount Plaintiff's credibility based on the fact that she collected unemployment benefits during the time period in which she claimed to be entitled to disability insurance benefits; the ALJ's conclusion is permissible under *Workman*.

Of the three reasons given by the ALJ for discounting Plaintiff's credibility, two of them are not supported by substantial evidence. Thus, the Court remands the matter for the purpose of clarifying Plaintiff's credibility assessment and, if necessary, reassessing Plaintiff's credibility. *See* 42 U.S.C. § 405(g) (sentence four).

Plaintiff also argues that Defendant failed to meet its burden to show that there is other work in the economy that Plaintiff can perform. *See Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) ("At step five, the Commissioner must identify a significant number of

jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile."). Specifically, Plaintiff argues that the hypothetical question posed to the vocational expert (VE) was insufficient because it did not include language from the RFC stating that she must be permitted to sit or stand at will up to once every fifteen minutes, resulting in her being off task up to 15% of the workday. In order for a VE's testimony to constitute substantial evidence that a significant number of jobs exists in the economy, "the question[s] must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2011).

In the present case, the ALJ asked the VE

> to assume an individual who is currently 42 years old and possesses the same educational background and work history as Ms. Logan. Assume an ability to stand and walk no more than six hours in an eight-hour day. The individual could sit up to six hours of eight. Lifting would be limited to twenty pounds occasionally and ten pounds frequently. There could be no pushing or pulling of levers or pedals with any of the extremities. Kneeling, crouching, crawling, bending, climbing, squatting would all be limited to occasionally. Reaching would be limited to no more than two-thirds of the workday activity. There could be no frequent gripping, twisting, or turning bilaterally, and no use of vibratory tools.

Page ID 97-98. In response, the VE testified that, although an individual with the above restrictions could not perform Plaintiff's past work, there are jobs that exist in the national economy that such an individual could perform, namely, an inspector (10,000 jobs in southeast Michigan), and a sorter/packer (6,000 jobs in southeast Michigan). Page ID 98. The VE was then asked to further limit the hypothetical as follows: "assume that [the] individual would need to be able to sit or stand at will, even if it's every fifteen minutes changing position." In response, the VE testified that the individual could still perform the two above-described jobs, with the caveat that "if the act of sitting and standing took [the individual] off task more than twenty percent of a workday," all employment would be precluded. *Id.* The ALJ then asked the

7

VE to further limit the hypothetical as follows: "assume the individual was limited to simple, routine tasks in a low-stress environment defined as no quick decision-making and no quick judgment required on the job.  In addition, the individual would be limited to a non-production pace setting."  In response, the VE testified that the individual could still perform the above two jobs.  Page ID 98-99.  Finally, the VE was asked to consider the following additional limitation: "assume the individual would need to lie down throughout the day for at least ten to twenty minutes at a time and this would occur four to five time during a  day."  In response, the VE testified that all work would be precluded.  Page ID 99.

In the RFC, the ALJ concluded that Plaintiff "would need to be able to sit/stand at will up to once every 15 minutes, resulting in being off-task up to 15% of the day."  Page ID 69. Although the VE testified that all work would be precluded if the act of sitting/standing took the individual off task more than 20% of the workday, the record contains no testimony from the VE as to the number of jobs that would be available if the act of sitting/standing resulted in being off task for 15% of the workday.  Defendant argues that the ALJ's error in failing to ask about a limitation that took the individual off task for 15% of the day was harmless:

> The VE testified that if the act of sitting and standing caused the hypothetical person to be off  task more than 20% of the workday, then it would preclude competitive employment.  The VE identified 16,000 jobs in the region that could be performed by a person who needed to shift between sitting and standing every 15 minutes.  If competitive employment would be precluded by a limitation involving being off task more than 20% of the workday, it is reasonable to believe that a restriction to being off task for up to 15% of the workday may reduce the number of jobs, but would not be work preclusive.
>
> The VE identified jobs with 16,000 positions in the region.  Even if that number was drastically reduced, there would still be a sufficient number of jobs to support a finding that Plaintiff was not disabled.  *See Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 579 (6th Cir. 2009) (citing *Hall v. Bowen*, 837 F.2d 272, 273, 275 (6th Cir. 1988)) for the notion that there is no bright line between a significant number and an insignificant number of jobs and finding that 2,000 jobs constituted a "significant number").  Plaintiff fails to identify reversible error.

8

Page ID 730 (citations to the record omitted).  The Court disagrees with Defendant that the error

was harmless.  As Plaintiff notes in her reply, Defendant's harmless error argument is based

entirely on speculation:

> Defendant contends that that ALJ would have found a large number of jobs
> regardless and that the plaintiff could still perform work existing in significant
> numbers.  Also, that it is "reasonable" to believe that being off task for 15% of the
> work day would not be work preclusive.  Of course, this reviewing Court is left to
> speculat[e] what the VE would have testified to since no hypothetical with these
> restrictions was included.

Page ID 734 (citations to the record omitted).  The Court cannot speculate as to how the VE

would have responded to a proper hypothetical question.  The VE's testimony that all work

would be precluded for an individual who needs to sit/stand at will resulting in being off task for

20% of the workday by no means proves that a significant number of jobs exist in the economy

for an individual who must be able to sit/stand at will resulting in being off task for 15% of the

workday.  Because the hypothetical question relied upon by the ALJ in this case does not take

into account the full extent of Plaintiff's determined limitations, the VE's response thereto

cannot be used to carry Defendant's burden of proving the existence of jobs that Plaintiff can

perform.  Accordingly, the case must be remanded pursuant to the fourth sentence of 42 U.S.C. §

405(g).  *See Ealy*, 594 F.3d at 516.

For the reasons stated above, Plaintiff's motion for summary judgment is granted,

Defendant's motion for summary judgment is denied, and the case is remanded for further

administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. §

405(g).  On remand, the ALJ should (1) clarify her reasons for discounting Plaintiff's credibility,

ensuring that each reason is fully explained and supported by the evidence, and (2) determine

whether a significant number of jobs exist for Plaintiff in the national economy, given her RFC,

through the use of a hypothetical question that accurately incorporates Plaintiff's limitations.[2]

> **SO ORDERED.**

Dated: May 29, 2014                    s/PATRICK J. DUGGAN
                                       UNITED STATES DISTRICT JUDGE

Copies to:

Robert F. Samoray, Esq.
Judith E. Levy, Esq.
Russell Cohen, Esq.

---

[2] If necessary, the ALJ may reassess Plaintiff's credibility on remand.  The Court notes that Plaintiff's credibility assessment is particularly important in the present case.  Plaintiff testified that she has to lie down four to five times per day for about ten or twenty minutes each time. When asked by the ALJ to assume an individual would need to lie down four or five times throughout the day for at least ten to twenty minutes each time, the VE testified that all work would be precluded.